**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>Christopher D. Gistis,<br><br>　　　　　　　　　　Debtor | Chapter 7<br>Case No. 18-10710 |
| Nathaniel R. Hull, chapter 7 trustee for Christopher D. Gistis,<br><br>　　　　　　　　　　Plaintiff<br>　v.<br><br>Cenlar FSB<br>& Federal National Mortgage Association,<br><br>　　　　　　　　　　Defendants | Adv. Proc. No. 19-1008 |

**MEMORANDUM OF DECISION**

Nathaniel R. Hull, chapter 7 trustee for Christopher D. Gistis, has filed a multi-count complaint [Dkt. No. 1] (the "Complaint") seeking, among other things, to: (a) avoid a transfer of the proceeds of an unauthorized, postpetition sale of real property; (b) recover those proceeds or their value; and (c) secure an award of damages for the application of those proceeds to the debt secured by a mortgage on the property. Cenlar FSB and Federal National Mortgage Association (the "Defendants") have moved, under Fed. R. Civ. P. 12(b)(6), for dismissal of the Complaint in its entirety. That motion will be granted in large part.

**FACTUAL BACKGROUND**

The following facts are drawn from the Complaint, the mortgage incorporated therein [Dkt. No. 50], and matters that appear on the docket in this adversary proceeding and the associated chapter 7 case. *See* Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortg.

Bankers Corp.), 324 F.3d 12, 15 (1st Cir. 2003) (explaining that a court analyzing a Rule 12(b)(6) motion may consider "not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice").

The Debtor owned certain real estate in Westbrook, Maine (the "Property"). In 2017, Federal National Mortgage Association ("FNMA") became the holder of a mortgage on the Property. Cenlar was the loan servicing agent for FNMA. In June 2018, the Debtor entered into a listing agreement giving Century 21 North East the exclusive right to sell the Property for $179,900 for a one-year period.[1] Five months later, the Debtor agreed to sell the Property to an unrelated third party for $166,700.

Two weeks later, on December 13, 2018 ("the Petition Date"), the Debtor started a chapter 7 case. On Schedule A/B, he listed an interest in the Property, which he valued at $182,000. On Schedule D, the Debtor indicated that Cenlar held a claim of $181,311 secured by the Property. Neither the listing agreement nor the purchase and sale agreement were disclosed on Schedule G. Instead, the Debtor affirmatively represented that "No" executory contracts were in existence. On his Statement of Intent, the Debtor indicated that he wished to retain the Property and enter into a reaffirmation agreement. A few days after the Petition Date, counsel for FNMA entered an appearance in the case.

Cenlar provided the Debtor with a payoff statement (the "Payoff Statement") indicating that the sum of $154,034.10 would be necessary to pay off the loan secured by the Property on or before January 23, 2019. On January 4, 2019, the Debtor sold the Property without obtaining authority from the Court. The buyer paid $166,700 (the "Sale Proceeds") for the Property at closing. From the Sale Proceeds, Cenlar or FNMA received a payment of $154,034.10 in

---

[1] The Trustee asserts two different numbers for the list price: $179,900 and $179,700. The difference is immaterial.

satisfaction of the debt secured by the mortgage.  On January 11, 2019, a warranty deed was recorded evidencing the sale.  About two months later, FNMA recorded a discharge of the mortgage.  To date, neither Cenlar nor FNMA have filed a proof of claim in the chapter 7 case.

In July 2019, the Trustee initiated this adversary proceeding, articulating fifteen counts for relief against the Defendants and Century 21 North East.  Five counts in the Complaint were asserted only against Century 21 North East.  The Trustee has reached a compromise with Century 21 North East, and it has been dismissed as a party to the proceeding.  *See* [Dkt. No. 51].  The remaining counts of the Complaint—all asserted against both Cenlar and FNMA—are summarized below:

| Count | Requested Relief |
|---|---|
| I | Declaration that the Sale Proceeds are unencumbered by the mortgage, and that any claims held by the Defendants are unsecured (11 U.S.C. §§ 552 & 506) |
| II | Disgorgement of the Sale Proceeds distributed to the Defendants (11 U.S.C. § 726) |
| IV | Avoidance of unauthorized postpetition transfer of the Sale Proceeds to the Defendants (11 U.S.C. § 549) |
| V | Recovery of the avoided unauthorized postpetition transfer of the Sale Proceeds to the Defendants (11 U.S.C. § 550) |
| VIII | Turnover of the Sale Proceeds (11 U.S.C. § 542) |
| X | Objection to Payoff Statement as a claim (11 U.S.C. § 502) |
| XI | Disallowance of any claims held by the Defendants (11 U.S.C. § 502(d)) |
| XIII | Damages for the Defendants' violation of the automatic stay (11 U.S.C. § 362(k)) |
| XIV | Damages for the Defendants' civil contempt of the automatic stay (11 U.S.C. § 105) |
| XV | Equitable subordination any claims held by the Defendants (11 U.S.C. § 510(c)) |

The Trustee has not named the purchaser of the Property as a defendant; he is not seeking to avoid the sale of, or to recover, the Property from the purchaser.  Instead, the Trustee's efforts are directed entirely at the Sale Proceeds.

## ANALYTICAL FRAMEWORK

Rule 12(b)(6) requires dismissal of a complaint that does not contain "enough facts to state a claim to relief that is plausible on its face."  *See* <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

- 3 -

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In evaluating whether a complaint meets this threshold, the Court disregards legal conclusions and "[t]hreadbare recitals of the elements of a cause of action[.]" Id. at 678-79. The remaining well-pleaded factual allegations are accepted as true, and all reasonable inferences from those allegations are drawn in the plaintiff's favor. Lemelson v. U.S. Bank Nat'l Ass'n, 721 F.3d 18, 21 (1st Cir. 2013). "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." Jones v. Bock, 549 U.S. 199, 215 (2007). For example, a complaint that contains a built-in defense may be dismissed under Rule 12(b)(6) if the complaint and the documents incorporated therein demonstrate that the defense applies. *See* San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 687 F.3d 465, 491-92 (1st Cir. 2012) (citing 5 Wright & Miller, Federal Practice & Procedure § 1226, at 302-04 (3d ed. 2004)).

## ANALYSIS

The analysis proceeds count-by-count, with closely related counts grouped together.

### A. Counts I & II: Declaration with Respect to Extent of Interest in the Sale Proceeds & Disgorgement of Distribution of Property of the Estate

In Count I, the Trustee avers that the mortgage did not create a security interest in the Sale Proceeds.[2] He asks the Court to declare that the Sale Proceeds are unencumbered under 11 U.S.C. § 552 and that any claim that the Defendants may have against the estate is unsecured under 11 U.S.C. § 506. In Count II, the Trustee doubles down. Operating from the assumption that the Defendants are unsecured as to the Sale Proceeds, he contends that they should be ordered to disgorge the $154,034.10 they received because that distribution to them did not

---

[2] Because this allegation constitutes a legal conclusion, it is not credited as true for purposes of the Defendants' motion to dismiss.

comply with the priority scheme of 11 U.S.C. § 726. In effect, the Trustee says that the Defendants' receipt of a portion of the Sale Proceeds elevated payment of their general unsecured claim ahead of claims of superior legal rank.

To determine whether Counts I and II state plausible claims for relief, an examination of section 552 is necessary. Except as provided in 11 U.S.C. § 552(b), "property acquired by the estate or by the debtor after the commencement" of a bankruptcy case "is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." 11 U.S.C. § 552(a). Section 552(a) operates to prevent a prepetition security interest from reaching property acquired by the estate or the debtor postpetition. This is the general rule supplied by section 552(a). However, section 552(b)(1) provides an important exception to that general rule:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, *if* the debtor and an entity entered into a security agreement before the commencement of the case *and if* the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, *then* such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(1) (emphasis added).[3] The statute unpacks as follows: if two things are true —(1) the debtor and an entity entered into a prepetition security agreement, and (2) the security interest created by that agreement extends to property acquired by the debtor prepetition and to proceeds of that property—then the prepetition security interest extends to proceeds of

---

[3] The parties have not invoked—and this decision does not address—the exceptions to this exception found in sections 363, 506(c), 522, 544, 545, 547, and 548.

prepetition property acquired by the estate postpetition. If either of these two predicates is not met, then the security interest does not attach to the postpetition proceeds.

The first of these predicates is established by the well-pleaded facts: the Debtor and an entity entered into the mortgage before the Petition Date. The second predicate turns on an issue of law: did the security interest created by the mortgage extend to proceeds generated by a sale of the Property? If it did, then the Trustee is not entitled to the relief that he seeks in Counts I or II. For his part, the Trustee argues that the Sale Proceeds are unencumbered because the mortgage does not contain language expressly extending the security interest to proceeds of the Property. The Defendants do not point to any part of the mortgage that expressly covers the proceeds from a voluntary transfer of the Property by the Debtor. But the extent of the security interest created by the mortgage turns on the provisions of the mortgage *and* applicable nonbankruptcy law. *See* 11 U.S.C. § 552(b)(1). Applicable nonbankruptcy law is where the Trustee's theory stumbles.

In Maine, "a mortgage is a conditional conveyance vesting legal title to the property in the mortgagee, with the mortgagor retaining the equitable right of redemption and the right to possession." Mortg. Elec. Registration Sys., Inc. v. Saunders, 2 A.3d 289, 294 (Me. 2010). A Maine mortgage takes the form of "a deed of warranty with a condition subsequent defining the means by which the [mortgagor] may defeat the conveyance." Johnson v. McNeil, 800 A.2d 702, 704 (Me. 2002) (quotation marks omitted). The mortgagor's equity of redemption, also known as equitable title, consists of "the right to redeem the property by payment of the indebtedness for which the real estate was conveyed as security." Smith v. Varney, 309 A.2d 229, 232 (Me. 1973). Until the debt is satisfied, the mortgagee holds title to the property as security for the debt, with the lien following the collateral. The mortgagee's lien on the property

is extinguished upon payment of the debt. Sabina v. JPMorgan Chase Bank, N.A., 148 A.3d 284, 286 (Me. 2016).

Section 552 generally cuts off floating liens that would otherwise attach to postpetition collateral under Article 9 of the Uniform Commercial Code. *See* S. Rep. No. 95-989, at 91 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5877 ("Under the Uniform Commercial Code, Article 9, creditors may take security interests in after-acquired property. Section 552 governs the effect of such a prepetition security interest in postpetition property.") Although the statute applies to all consensual security interests, including mortgages, *see* id. (indicating that section 552 applies to all security interests as defined in 11 U.S.C. § 101), it is not commonly applied to the funds realized upon the sale of real property. The parties did not direct the Court to any caselaw analyzing such a scenario, and the Court was unable to locate other decisions issued on similar facts. In the absence of binding or persuasive authority, the Court looks to the purposes of the statute and brings commonsense to bear.

Some courts perceive that the general rule of section 552(a) is intended to maximize estate property available to satisfy creditors' claims, while the exception under section 552(b) "balances the Code's interest in freeing the debtor of pre-petition obligations with a secured creditor's rights to maintain a bargained-for interest in certain items of collateral." Arkison v. Frontier Asset Mgmt., LLC (In re Skagit Pac. Corp.), 316 B.R. 330, 336 (B.A.P. 9th Cir. 2004). The sale of personal property that serves as security for a debt in exchange for money constitutes an event of collateral disposition under Article 9 of the Uniform Commercial Code. *See* Me. Rev. Stat. Ann. tit. 11, § 9-1102(64)(a) ("'Proceeds' means . . . [w]hatever is acquired upon the sale, lease, license, exchange or other disposition of collateral[.]"). When there is a disposition of personal property collateral, the security interest will reach the proceeds of the sale (namely,

the money or other property received) if the creditor bargained for a security agreement that expressly extends the security interest to the proceeds of the original collateral or if otherwise provided by the Uniform Commercial Code. *See, e.g.*, Me. Rev. Stat. Ann. tit. 11, § 9-1315 (describing a secured party's rights in proceeds of collateral). The sale of encumbered real estate is fundamentally different. The sale does not transform the collateral from one type of collateral (real estate) to another type of collateral (proceeds), with the debt continuing to exist after the transformation. Instead, the lien created by a Maine mortgage exists and attaches to the real estate until funds are applied to pay the debt; at that point, the lien is extinguished. A creditor that holds a mortgage on real estate in Maine need not specifically bargain for a provision in the mortgage document extending the lien to any proceeds realized upon sale of the real estate.

For purposes of section 552(b), a mortgage on real estate in Maine extends to both the real estate and the proceeds realized from the sale until those proceeds are applied to extinguish the mortgage. The security interest follows the real estate until the debt is paid; this is the bargained-for interest, and it is not cut off under section 552(a). This conclusion follows from the text and purpose of section 552(b) and the nature of a mortgage under Maine real estate law, not from the words used in (or missing from) the written document creating the mortgage. The relief sought by the Trustee in Counts I and II would tip the scales in favor of the estate, and against the secured party, in a decisive and unfair manner. *See* In re Somero, 122 B.R. 634, 639 (Bankr. D. Me. 1991) ("The legislative history of section[] . . . 552(b) conforms to the plain language of the Code. Both the House and Senate Reports on § 552(b) state the obvious—§ 552(b) provides a creditor-oriented exception to the general rule of 552(a) which holds that property acquired post-filing is property of the estate."); *see also* Smoker v. Hill & Assocs., Inc., 204 B.R. 966, 972-74 (N.D. Ind. 1997) (referencing the balance struck between section 552(a)

and the fresh start on one hand and section 552(b) and secured creditors' contractual expectations on the other hand, and looking to state law, as the applicable nonbankruptcy law specified by section 552(b), to define the extent to which postpetition proceeds remain subject to a prepetition security interest). As such, Counts I and II will be dismissed under Rule 12(b)(6).

### B. Counts IV, V, & XI: Avoidance & Recovery of Unauthorized Postpetition Transfer of the Sale Proceeds & Disallowance of Claims

In Count IV, the Trustee seeks a judgment under 11 U.S.C. § 549 avoiding the transfer of $154,034.10 of the Sale Proceeds to the Defendants. In Count V, the Trustee seeks to recover the funds transferred to the Defendants under 11 U.S.C. § 550 or their value. And, in Count XI, the Trustee contends that any claims against the estate held by the Defendants must be disallowed under 11 U.S.C. § 502(d) because the transfer is avoidable, and they have not surrendered the transferred funds to the Trustee. For their part, the Defendants assert that if the Trustee were to prevail on his claims for avoidance and recovery, they would be entitled to assert a secured claim against the estate under 11 U.S.C. § 502(h). They look to Fleet National Bank v. Gray (In re Bankvest Capital Corp.), 375 F.3d 51 (1st Cir. 2004) as controlling, arguing that avoidance would be pointless given the revival of their secured claim under section 502(h). The Trustee reads Bankvest differently. He contends that the decision does not control because the transferee in that case was secured as to the property received, unlike the Defendants here who were allegedly unsecured as to the Sale Proceeds.

In Bankvest, the First Circuit affirmed a determination that avoidance would be pointless where the creditor would have a secured claim under section 502(h) after avoidance and would be entitled to receive exactly what was avoided. 375 F.3d at 70-71. In that case, the creditor, who held a perfected security interest in substantially all of the debtor's assets, accepted payments during the "gap period" between the filing of an involuntary petition against the debtor

and the entry of the order for relief.  Id. at 55-56.  The committee of unsecured creditors sought to avoid the "gap payments" under section 549.  Id. at 56.  The creditor moved to dismiss the avoidance claim under Rule 12(b)(6), asserting that it would not benefit the estate.  Id.  After losing on the motion and at trial, the creditor had better success on appeal, where the district court determined that the creditor was entitled to a secured claim under section 502(h) equal to the avoided payments.  Id. at 57.

The First Circuit affirmed, concluding that, under section 502(h), "the secured or unsecured nature of the claim will be determined" by reference to the characteristics of the original claim.  Id. at 67.  Before the petition date, the creditor had a security interest in the funds used to make the "gap payments" and that original, prepetition status determined the nature of its claim under section 502(h).  Id. at 69.  The Court saw "no reason, nor any indication of legislative intent in § 502(h), to strip a secured creditor of its secured claim" under the circumstances and perceived that doing so would be "manifestly unfair."  Id. at 67.  Although the creditor may have acted improperly by accepting the "gap payments" with knowledge of the bankruptcy, the Court stated that it would be inequitable if the creditor's "prepetition secured claim became an unsecured section 502(h) claim after avoidance[.]"  Id.  In that scenario, "the gap payments would then presumably be distributed among other creditors, thus providing a windfall to the estate and depriving [the creditor] of the amount to which it was entitled."  Id.  Ultimately, the Court held that, upon avoidance of the "gap payments," the creditor's original claim—a secured claim—would be revived under section 502(h).  Id. at 68.

The lessons of Bankvest support the Defendants' position here.  As previously discussed, the facts alleged in the Complaint do not support the Trustee's legal theory that the Defendants had only an unsecured claim as to the Sale Proceeds.  Instead, the note and mortgage gave the

- 10 -

Defendants a prepetition claim secured by the Property, and that secured claim extended to the Sale Proceeds until the sum of $154,034.10 was applied to extinguish the debt and the lien. The facts alleged in the Complaint reveal that the Defendants received an amount of the Sale Proceeds equal to the Debtor's obligation. If the Defendants' postpetition receipt of $154,034.10 of the Sale Proceeds was avoided under section 549, and if the estate recovered those funds under section 550, the Defendants' prepetition secured claim would be revived under section 502(h). In this scenario, the Defendants would be entitled to receive $154,034.10 upon disbursement of the assets of the estate, and recovery would not benefit the estate as required by section 550(a).

In sum, the well-pleaded factual allegations in the Complaint give rise to the built-in legal defense provided by section 550(a), section 502(h), and Bankvest. That defense thwarts the Trustee's efforts to state a plausible claim for avoidance under section 549, recovery under section 550, and disallowance of any claims the Defendants may assert against the estate after avoidance and recovery under section 502(d). As such, Counts IV, V, and XI will be dismissed. *See* Lowe v. Sheinfeld, Maley & Kay, P.C. (In re Saunders), 155 B.R. 405, 415 (Bankr. W.D. Tex. 1993) (dismissing complaint for avoidance of unauthorized postpetition transfers to secured party where transfers gave that party funds to which it had a secured claim); Dave Noake, Inc. v. Harold's Garage, Inc. (In re Dave Noake, Inc.), 45 B.R. 555, 557 (Bankr. D. Vt. 1984) (dismissing complaint to recover an unauthorized postpetition payment to a secured creditor because the debtor "was bound to pay, sooner or later," the creditor's secured claim).

### C. Count VIII: Turnover of the Sale Proceeds

In Count VIII, the Trustee asserts that the Defendants should be ordered to turn the funds they received from the Sale Proceeds over to him under 11 U.S.C. § 542(a). In relevant part,

section 542(a) states that "an entity . . . in possession, custody, or control, during the case, of property that the trustee may use . . . under section 363 . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."  11 U.S.C. § 542(a).  The statute requires an entity "holding property of the estate on the date of filing from which the trustee may benefit the estate under § 363 to deliver the property to the trustee."  Braunstein v. McCabe, 571 F.3d 108, 116 (1st Cir. 2009).  The turnover remedy is equitable in nature and is subject to equitable constraints.  See id. at 121 (citing Bank of Marin v. England, 385 U.S. 99 (1966)).  It is also subject to the restraint imposed by 11 U.S.C. § 363(e).  Under that provision, on request of an entity with an interest in property that the trustee proposes to use, "the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection to such interest."  Id.

The Trustee fails to state a plausible claim for turnover in several respects.  As an initial matter, the Sale Proceeds ceased to be property of the estate that the Trustee could use under section 542(a) when they were applied to extinguish the debt secured by the mortgage on the Property.  If the Trustee were somehow able to avoid the transfer of the Sale Proceeds to the Defendants, and thereby unwind the application of those proceeds to the debt, he might be able to secure a turnover order.  However, as previously discussed, that remedy would not benefit the estate because the Defendants' secured claim would be revived under section 502(h) and Bankvest.  In addition, the Trustee would have no ability, in the circumstances of this chapter 7 case, to provide adequate protection to the Defendants' interest in the Sale Proceeds following the sale of the Property.  See 11 U.S.C. § 363(e).  Although the Defendants had notice of the case and may have acted wrongfully by proceeding with the transaction despite that notice, depriving them of their secured claim through a turnover action would be manifestly unfair, especially

where the Code may supply other remedies for such conduct. *See* Norton v. Associated Grocers of Me. (In re Peabody), 51 B.R. 157, 159 (Bankr. D. Me. 1985) (denying trustee's motion for turnover of funds in account as to which creditor had exercised setoff right postpetition and concluding that although trustee may be entitled to remedy for stay violation, denial of creditor's right to setoff amount was not proper). Count VIII will be dismissed.

**D. Count X: Objection to Claim**

In Count X, the Trustee objects to the Payoff Statement to the extent that it constitutes a claim against the estate. He asserts that the claim should be "denied" unless Cenlar can prove the amounts owed as set forth in the Payoff Statement through the introduction of admissible evidence at trial.

As an initial matter, the Court is not persuaded that the Payoff Statement is a formal or informal proof of claim, in either case asserting a claim against the estate. By issuing the Payoff Statement, the Defendants were not attempting to utilize the bankruptcy process to obtain payment of a claim from the estate. The only reasonable inference is that the Debtor asked the Defendants for a payoff statement in connection with what appeared to be a routine residential real estate transaction. The Payoff Statement is not a claim against the bankruptcy estate that can be allowed (or disallowed) under section 502 and addressed under the Code.

Moreover, the Trustee does not allege any facts that suggest—let alone plausibly state—that the amounts set forth in the Payoff Statement may be inaccurate or unsubstantiated. In the absence of such allegations, Count X will be dismissed for failure to state a claim. *See* 11 U.S.C. § 502(b) (articulating grounds to disallow a claim).

### E. Counts XIII, XIV, & XV: Willful Violation of the Automatic Stay, Civil Contempt, & Equitable Subordination of Claims

In the final count of the Complaint, the Trustee seeks subordination as a remedy for the Defendants' alleged stay violations. That effort falls short. Subordination is only appropriate under 11 U.S.C. § 510(c) if: (a) the claimant engaged in inequitable conduct, (b) that conduct caused injury to creditors or unfairly advantaged the claimant, and (c) the remedy is not in conflict with the other provisions of the Code. Merrimac Paper Co. v. Harrison (In re Merrimac Paper Co.), 420 F.3d 53, 59 (1st Cir. 2005). Here, the Trustee has alleged that the *Debtor's sale of the Property* may have caused some injury to the estate. But he has not stated plausible claims that the alleged stay violations by the Defendants resulted in injury to creditors or unfair advantage to the Defendants. Count XV will be dismissed.

In Counts XIII and XIV, the Trustee asserts that the Defendants violated the automatic stay provided by 11 U.S.C. § 362(a)(6) by applying the Sale Proceeds to the prepetition mortgage debt. In his objection to the Defendants' motion, the Trustee also asserts that the Defendants violated the automatic stay under 11 U.S.C. § 362(a)(3) by providing the Payoff Statement to the Debtor. The Trustee further asserts that the Defendants had notice of the case, as evidenced by the appearance of counsel for FNMA, rendering the stay violation(s) willful within the meaning of 11 U.S.C. § 362(k). He contends that the Defendants are liable to the estate for its actual damages, including the sum of $13,200—the difference between price at which the Property was listed and the amount for which the Property sold—plus attorney fees and costs, and potentially punitive damages. The Trustee's request for damages relies on section 362(k) in Count XIII; in Count XIV, that same request relies on the Court's power under 11 U.S.C. § 105(a).

For their part, the Defendants contend that Cenlar's "passive acceptance of a voluntary payment from the Debtor on account of Cenlar's secured claim" did not violate the stay, especially in light of the Debtor's stated intent to reaffirm the debt. [Dkt. No. 35, p. 12.] They also contend that the stay violation claims fail because the payment did not cause the estate any harm. The Defendants further assert that the Trustee's calculation of actual damages is deficient. In this vein, they argue that the Court should view the Trustee's failure to initiate an avoidance action against the purchaser as a concession that the purchaser would be protected by 11 U.S.C. § 549(c) because the Property sold for its actual value.

One of the purposes of the automatic stay is to preserve the status quo between the debtor and creditors at the time of filing in order to provide the parties and the court "an opportunity to appropriately resolve competing economic interests in an orderly and effective way." Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 919 F.3d 121, 129 (1st Cir. 2019) (quotation marks omitted). Section 362(a)(3) accomplishes that purpose by staying "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(3). Section 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case[.]" 11 U.S.C § 362(a)(6). In a chapter 7 case, the trustee takes control of estate property to ensure that value is distributed to the holders of claims against the estate in accordance with the priority scheme set forth in the Code. The automatic stay facilitates this orderly process, precluding "most extrajudicial acts against the debtor, or affecting property in which the debtor, or the debtor's estate, has a legal, equitable or possessory interest." Interstate Commerce Comm'n v. Holmes Transp., Inc., 931 F.2d 984, 987 (1st Cir. 1991). In this case, the orderly process contemplated by the Code was not followed.

There is only one reasonable inference that can be drawn from the allegations regarding the Payoff Statement.  The act of issuing the Payoff Statement was not a coercive or harassing attempt to collect a debt.  It was, instead, generated at the Debtor's request to facilitate a transaction that the Debtor wished to pursue.  As such, the issuance of the Payoff Statement did not violate the automatic stay.  See Knowles v. Bayview Loan Servicing, LLC (In re Knowles), 442 B.R. 150, 161 (B.A.P. 1st Cir. 2011) (holding that a creditor does not violate the automatic stay by sending a payoff statement to the debtor if the debtor requests that statement and the statement cannot be construed as an attempt to seek payment from the debtor).

However, the Defendants may have engaged in conduct proscribed by section 362(a) when they applied the Sale Proceeds to the prepetition mortgage debt.  While there appears to be no controlling caselaw on this question, there are some cases that could be read to support the Trustee's stay violation theory.  See, e.g., Gordon v. Taylor (In re Taylor), 430 B.R. 305, 313 (Bankr. N.D. Ga. 2010) (concluding that creditor violated stay under section 362(a)(6) by applying postpetition payment to prepetition loan); Krivohlavek v. Boys Town Fed. Credit Union (In re Krivohlavek), 405 B.R. 312, 316 (B.A.P. 8th Cir. 2009) (concluding that creditor's application of funds to payment of debt constituted an act to collect a debt prohibited by section 362(a)(6)).  The Court need not decide whether these cases are persuasive at this juncture.  Ultimately, the Trustee ekes out a plausible claim that the Defendants violated the stay by applying the Sale Proceeds to the prepetition debt.  Although the Court is skeptical of the damages calculation embedded in the Trustee's stay violation claim, those doubts must be

resolved in favor of the Trustee at this time.[4]  For now, the Trustee's stay violation claims survive.  The motion to dismiss will be denied as to Counts XIII and XIV.

## CONCLUSION

For the reasons set forth above, a separate order will issue granting in part and denying in part the Defendants' motion to dismiss the Complaint.

Date:   January 3, 2020

Michael A. Fagone
United States Bankruptcy Judge
District of Maine

---

[4]  The Trustee's damage calculation seems to assume that the listing price for the Property was the actual or "true" value.  If that is, in fact, a critical assumption for the Trustee's theory of damages, the Trustee will face stiff headwinds as the case progresses.